v. Michael F. Golden, et al. Mr. Williams, who's starting? May it please the Court, my name is Julia Williams, counsel for Appellant Aaron Sarnacki. With the Court's permission, I would like to reserve two minutes for rebuttal. Yes, you may have it. The parties agree both of this appeal should be considered de novo, and the procedures detailed in the Seminole, Delaware case of Zapata v. Maldonado apply to the consideration of whether the Special Litigation Committee issue, in this case, motion for summary judgment should have been granted in the Court below. Zapata explains that the Special Litigation Committee must show that its members are both factually independent and that they acted independently, that is, that they conducted an investigation in good faith and that it was reasonable. The policy underlying Zapata contemplates a critical review of an SLC investigation by the Court, and the steps show that the Court's not supposed to rubber stamp a Special Litigation Committee's motion to dismiss. It's supposed to do a careful analysis of the SLC investigation, and correspondingly, that's why the SLC has the burden on the motion to show that there are no genuine issues, material fact, about the SLC's independence and about the good faith and reasonableness of the investigation. We assert that the District Court erred in application of this standard in three material ways. First, it drew impermissible inferences against the plaintiff and in favor of the SLC with respect to the good faith and reasonableness of the investigation. Second, it improperly considered the burden to be plaintiff's with respect to showing that the SLC members were independent. And then third, the Court denied discovery into key communications between counsel for the Special Litigation Committee on one hand, and counsel for defendants in the securities class action that were involved, and then reached conclusions about the reasonableness of those interactions, despite the fact that plaintiff was denied access to that discovery. I have a sort of theoretical question. We are here applying Delaware law, and you've, as I understand it correctly, outlined the components of Delaware law. It is also true that there was several, I guess, prior securities actions that are, quite parallel to your state law claims, with the exception of forward-looking statements. Now, Judge Boudin concluded in the securities action that there was no evidence of cyander, and along the way he characterized the background facts on which you do rely as a rule of law. Now, this is a very, very thin case, a dubious case under state law principles. Should that influence our view of the ultimate outcome of this case, which is that the SLC concluded there was not a basis in good faith to bring the case and made that recommendation? Your Honor, I don't believe that it should, and there's a couple of reasons that are outlined in the brief as to why. First of all, there are additional defendants named in this case that were implicated in the letters that plaintiff and that other shareholders had sent to the board and that the SLC was investigating. Second, as you mentioned, the forward-looking statements were not at issue in the securities class action, but there are potentially actionable state law claims. And then third, the state law claims really are distinct from securities claims under the Private and Securities Litigation Reform Act. The PSLRA has heightened pleading standards and heightened standards that a plaintiff at trial would have to show that would not necessarily be the case for state law derivative claims, and that is that you have to show cyander in a securities fraud case. Whereas if there were officer defendants, you could show that they just breached their duty of care in a derivative case in a state law claim, and that would be sufficient to hold somebody actionable. And the difference in standards between a breach of duty of care and having to show cyander that they act with intent to defraud is material. And as we detail in the brief, the SLC's investigation, the way that it was conducted, made it so there was big gaps where the SLC members never looked at these sort of issues. Let me ask you, what in this investigation was done or wasn't done that wouldn't be done or not done in virtually any investigation? It seems to me it's inconceivable that you could have an investigation of one of these claims in which there aren't decisions made to either look or not look at something, and you're not going to look at everything, and you have to make judgments along the way. What here stands out compared to a hundred and other routine SLC investigations? Well, what stands out is the sort of cascading effect of decisions that were made that really call into question how the investigation was conducted. First, the SLC relied really heavily on their counsel that they retained, which in and of itself might not have been a problem. In fact, if they hadn't relied on experienced counsel, wouldn't you be up here saying that they didn't do the diligence by getting really good lawyers and relying on them? Well, there's a difference between relying on counsel and abdicating your investigation to counsel. As the depositions from the SLC, the testimony from the SLC members made clear, they really were involved in the most critical areas of the investigation. They were involved in the most perfunctory manner. They didn't recall seeing the demands. They didn't review many documents. They didn't attend witness interviews. They didn't review the witness interview summaries. They didn't see investigator reports. They weren't really involving themselves. They were letting counsel conduct the investigation. And as you say, you know, it's fine for SLC counsel to take the lead on conducting an investigation, but it's not fine for the SLC to step back and say, okay, I'm going to let you run the show. Well, I don't want to interrupt you here, but I do recall in reading this that to some extent, when the members responded, they said this is a long time ago. We looked at this several years ago. We don't recall all of this. That's a little bit different from saying I didn't do it. That's true, Your Honor, and if you look at the testimony, though, there's instances where it's clear that saying I don't recall doing this or not that I recall meant, no, we didn't do this or I don't know what happened because I wasn't really involved. But they all read the full report of counsel, didn't they? Well, they did, and they adopted that report. So why isn't that enough? You go out, you hire a very experienced counsel, you have them do an investigation. It's in the context, as the Court already observed, of not a facially strong claim. And you get the report, you study it and read it. Are we to hold that they have a duty to start interviewing witnesses themselves? Well, SLC members are frequently involved in doing so. If I could just wrap that up, it was the extra step of being involved with defense counsel in the SLC's interaction with defense counsel and the SLC not doing anything to police those that pushes this over. Mr. Sten. Good morning and Happy New Year. I'd like to start where my sister had started on the burden question. One thing is clear that we both agree on is that the burden is on the non-moving party under the Zabata analysis. And so we do bear the initial burden, which the SLC met, and then that shifts the burden to the other side to rebut. And unfortunately, plaintiff here has absolutely not rebutted any of the showings. What about the independence showing? The thing that puzzles me here is why would the Board appoint to the SLC two members of the Audit Committee when, as I understand the evidence, the claimed wrongdoing was specifically approved by the Audit Committee, putting to one side whether it's wrong or not, but the statements, as one of your clients testified, they routinely reviewed and approved those statements. So why do you appoint a Board member who did that to investigate whether those statements were misleading? Well, that's a very good question. And the first part is that two of the members of the Audit Committee who are on the SLC, one of them is an attorney. So that played into the process. And is there evidence in the record that the Board cited that fact, that the Board considered that fact, and that was the reason they appointed that person? No, it's not specifically in the minutes. It was known by all, and that was a piece. If you stick to what's in the record. One of the more important pieces, yes, one of the more important pieces, though, is that the idea that the Audit Committee specifically approved the alleged misstatements. The alleged misstatements here run a wide range under the class action allegations. And I'm going to backtrack for a second because one of the first things, and I'm going to answer that question, but one of the first things we heard here was that the scope of the SLC's report or investigation was unduly limited because of the fact that forward-looking statements weren't in the class action. But one thing that should be noted is that the allegations of the securities class action, which is the genesis of this entire action over the past seven years, were very wide, and those allegations included all sorts of misstatements that were actually within the scope of what the SLC was looking at. Now, those weren't actionable claims under the securities class action, but they were definitely allegations, and the forward-looking statements were intertwined with the non-forward-looking statements because everything really came down to this idea of demand. That in June and October, the company said, looking forward, we see great demand now for our product, and we look forward in June 2007 about this. I'm certain you're directly responding to the question. I was coming back to it. Hadn't this SLC already been established, and so there was a question about whether they should disrupt it and start a new committee? Yes, Your Honor, and I was getting that question. I just wanted to put it in context because I think you need to understand the context of when the SLC was formed because after that class action was filed with those very wide allegations, a series of follow-on derivative claims were made. In those claims, no demand was made. They were just filed, and they all tracked more or less the allegations of the securities class action. So some of those were dismissed for failure to make demand, and then demands were made, and the SLC was formed. So the SLC was formed for a series of demands by someone named Bundy and Nance. Then Sarnacki, who had originally actually filed a suit and had it dismissed for failure to make demand, made a follow-on demand. But all those tracked the same allegations of the complaint, and they covered a lot of material, and the vast, vast majority of it was not reviewed and approved by the Audit Committee, contrary to my sister's statement. But where's the, see, I looked for that in the record, and your clients testified at their deposition that, as I said, the type of statements at issue would usually go through the Audit Committee, and their normal practice would be to review and approve them. And I don't, can you point to us anywhere in the record where any significant part of the alleged misleading statements were not reviewed by the Audit Committee? Yes. And in fact, Your Honor, I can show you the exact page on this and give you the site, but I think the easier part here would be to tell you that all that's in the record is the fact that the Audit Committee members said, yes, we review and approve the financial statements and the financial filings of the company. But if you look back at the allegations of the class action, the gravamen of all this are the series of press releases and conference calls by the former CEO and the former CFO about future demand. It's not actually the financial statements and the pieces that the Audit Committee approved that are at issue in this case. It's the statements of the others. I might be confusing this with something, but I thought your clients testified they looked at the press releases as well. No, and in fact, if you bear with me, I'll give you the exact quote because it's in here, which is, it says, it's in footnote 20 of actually, but it says we looked at the financial filings, not the press calls. Footnote 20 of what? Let me get to this. Is it footnote 20 of your brief? Well, what I'm not sure of is when I was calling it, because I knew this was coming up, whether it was from, because my recollection is, yes, footnote 20 of ours. Let's not spend time on this. Submit a 28-J letter within two days of oral argument identifying the portions of the record you're now looking for. What your sister seems to be saying to us is that once you look at it, that the committee itself didn't do an independent look at what was there, that they simply, at the end, read the report and said, okay, it's fine, and we're going home. And her argument is that there were gaps here that they obviously, in her view, should have considered and did not, and that that affects the independence argument. Your Honor, I absolutely understand that's what she's saying, but it's simply not true. The audit committee was formed. It met. It came up with its own initial strategy. It hired competent counsel. It delegated roles to the counsel, but it met seven times over the 16 months that it was formed. It was given updates at those by its counsel. It was provided with materials, as the testimony shows. They went through. They deliberated. I want to ask about something. Were they provided with the summaries of the interviews of board members? My understanding is that the record shows that they were submitted, they were provided with everything by its counsel. There is no evidence, is there, that they looked at the interviews of the board members? There are memos that went out, but it was either in oral form or in written. It wasn't always in written form because, as I said, they had seven meetings over the time. Is the defense that they did consider the interviews of the board members, they read them and they considered them, or is it that you don't know? I do not know. Okay. Because it's on her second argument whether they executed their investigation reasonably and in good faith. And she says that because they didn't do these things, how can that be reasonable or in good faith? Well, again, in context of the investigation, and some of this is, again, I think an improper analysis of the critique of the investigation itself, not the reasonableness of the investigation. Everybody makes different choices. Here, and I can only speculate, it may have been that they looked at the underlying allegations. They said, well, there's no merit to the underlying allegations, so what are we going to look at for the individual board members if the allegations themselves that underlie any of those claims are not true? Again, that's speculation, but the point is that's why you don't enter into that because then you're really just second-guessing an SLC as to it. It's looking at the procedure that they did and the process by which it was formed. I'm looking at Furman's testimony, and he says we review the final drafts of press releases, prove them for public. We certainly approve them for public disclosure. So I come back to my question. Given that your own client testified that they did review for and approve the press releases, what in the record is there to guide us as to why the board would have appointed those precise directors to be on the SLC as opposed to the directors who did not approve statements that are alleged to be misleading? Again, the board made its decision on all available facts. I don't know specifically what it was that made them decide that other than the experience and integrity of the various people and given the fact that there was a wide range of materials that were being considered at the time and that these were people with experience in this area and that there was no specific liability as to their specific approvals of those. There was nothing specific that said, Furman, you did this wrong with that approval. Let's go back. Now that we've established it wasn't just the financial statements, it was also the press releases. And that those would have been material to the original securities litigation as well as this follow-on litigation. Why did the board initially set up the committee with two members of the audit committee? And why not other members of the board? And what is there in the record on this? Your Honor, I'm not sure if there is very much in the record on that specific point other than the fact that, as I said before, there was nothing specific pointing at the audit committee at the time that this was put together but that the SLC was comprised of the three. What you're saying is the audit committee members were not named in the demand at the time the SLC was formed. Correct. Well, I take that back. They were not named specifically for being in the audit committee. The man named all the directors and so they would have been included in that. But the demand also specified what statements were at issue. The demand of Sarnacki, which is after, which came after the fact when the SLC had been formed and which, again, goes back to was covering the entire waterfront of the securities class action. But not in the original security class action? No, the original securities class action named the company and it named the former CEO and the former CFO, who were the two who actually made most of the statements that were at issue in the class action. Let me ask you this. At the time the SLC was first formed, before Sarnacki came along, were all the statements that were at issue being improper, were all of them statements that were approved, reviewed and approved by the audit committee? Not all the statements. Which ones were? During the teleconference call, there are questions by analysts. Okay. And so what would happen is the CFO would be asked questions, the CEO would be asked questions about what is driving demand? And, for example, the CEO would then say well, our M&P pistol is a driver of demand. It's up 110% from last year. But the rest of the statements were reviewed and approved by the audit committee in their normal function? Well, again, correcting my earlier one, the press releases, obviously, there's testimony that that happened, which I apologize for that oversight. The financial filings themselves, and I will go back and look to see if the actual scripts of the conference calls are specifically approved by the audit committee. Yes, we'd like to know that. I will find that out. Ms. Williams. To address a couple of points that my brother made, with respect to the burden shifting to plaintiffs to rebut the allegations, first of all, we contend that the SLC didn't present enough evidence to meet their initial burden to shift the burden. And, second of all, we assert that we did present evidence calling into question the good faith, the reasonableness, and the independence of the Special Litigation Committee and its investigation. With respect to my brother's comment about the allegations showing, and the forward-looking statements and those being investigated, allegations about forward-looking statements were not sustained in the securities class action. And one of the major problems that plaintiff points to with the investigation was that the SLC counsel went to counsel for defendants in the securities class action and used that set of documents that they were producing to the securities plaintiffs as the foundation for their investigation. And the documents being produced of those plaintiffs wouldn't have included any sort of separate discovery about the forward-looking statements since those weren't at issue in the case. And presumably, and I can't say this for certain, but presumably the plaintiffs in the securities class action wouldn't have objected to not getting those kind of documents because it wasn't an issue for them. I'm sorry, when were the forward-looking statements knocked out of the federal securities law action? I'm sorry, Your Honor, I don't It was before the demands were made. I thought it was post-discovery. No, no, no, Your Honor. It was at the motion to dismiss stage, which was before the demands were made. Okay. In conclusion, if I may, Your Honor, even if the independence issues, prejudging the claims, the lack of the SLC consideration of the audit committee conduct, the lack of the board considering the audit committee before appointing them to the Special Litigation Committee, even if those standing alone aren't enough to disqualify the SLC, when considered with SLC's counsel reliance on conflicted counsel, the gaps in the investigation, the SLC had the obligation to tightly monitor and take an active role in the investigation. They didn't. So for the foregoing reasons, appellant asked this court to reverse the holding of the court below. Is there any law on this question of appointing members of the audit committee? There are cases that have dealt with this. And haven't they said there's no per se rule against it? Yes, Your Honor, they do say there's no per se rule against it. But that's not all we have here. It's supposed to be considered as totality. And when you take everything into account, there's material questions of fact that support denial of that motion. Thank you.